UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

MICHELLE MARO,

    Plaintiff,

vs.

COMMUTER ADVERTISING INC.,

    Defendant.

Case No. 3:22-cv-219

District Judge Michael J. Newman
Magistrate Judge Peter B. Silvain, Jr.

_____

**ORDER: (1) GRANTING PLAINTIFF MICHELLE MARO'S MOTION TO CONFIRM THE ARBITRATION AWARD (Doc. No. 23); (2) DENYING DEFENDANT COMMUTER ADVERTISING INC.'S MOTION TO VACATE THE ARBITRATION AWARD (Doc. No. 32); AND (3) TERMINATING THIS CASE ON THE DOCKET**
_____

This case is before the Court following arbitration proceedings. Plaintiff Michelle Maro ("Maro") moves to confirm the $637,182.13 final award that the American Arbitration Association panel (the "Panel") issued in her favor (Doc. No. 23), to which Defendant Commuter Advertising Inc. ("Commuter") responded (Doc. No. 31) and Maro replied (Doc. No. 34). Commuter also moves to vacate the arbitration award (Doc. No. 32), to which Maro responded (Doc. No. 48) and Commuter replied (Doc. No. 49). Thus, both motions are now ripe for this Court's review. For reasons more fully stated herein, the Court grants Maro's motion to confirm the final arbitration award and denies Commuter's motion to vacate that award.

### I. BACKGROUND

**A. Underlying Facts**

The following facts, which are undisputed, come from the facts used in the interim arbitration award (Doc. No. 32-2), the final arbitration award (Doc. No. 32-5), Maro's employment agreement (Doc. No. 32-1), Commuter's supplemental arbitration brief (Doc. No. 32-4), and the subsequent motions that both parties have filed (Doc. Nos. 23, 30, 32).

Commuter is an advertising agency based in Dayton, Ohio (Doc. No. 30 at PageID 173) that does business across the United States. Doc. No. 23 at PageID 114. Maro, who was based in Cook County, Illinois during her employment, worked as President of Sales for Commuter from January 2016 until February 2017. *Id.* Her employment agreement provided that any dispute between Maro and Commuter would be resolved, "before a panel of three (3) arbitrators," in Dayton, Ohio. Doc. No. 32-1 at PageID 205-06.

Maro signed the employment agreement with Commuter on October 26, 2015. *Id.* at PageID 207. According to this agreement, which Commuter Chief Executive Officer Russ Gottesman ("Gottesman") signed on November 12, 2015 (*id.*), Maro would begin working for Commuter on January 1, 2016 as President of Sales. *Id.* at PageID 199. Maro's salary was $125,000 plus incentive compensation and stock options (*id.* at PageID 200), including a 2% commission on sales revenue only if she was still employed by the company when the commissions would typically be paid. *Id.* at PageID 209. Gottesman considered Maro the highest-paid employee because, while he earned approximately $140,000 to $160,000 in 2016, he did not receive any commissions. Doc. No. 32-2 at PageID 214; Doc. No. 32-1 at PageID 200. The employment agreement also contained an arbitration provision, which stated in pertinent part:

> Any dispute arising in connection with this Agreement or any other dispute, whether or not employment-related, between [Commuter], or any of its officers, directors, agents, employees, or any other person affiliated in any way with [Commuter], and Employee, shall be resolved by arbitration conducted before a panel of three (3) arbitrators, exclusively in Dayton, Ohio, in accordance with the commercial rules of the American Arbitration Association then in effect. Judgment may be entered on such arbitrators' award in any court having jurisdiction; provided, however that [Commuter] shall be entitled to seek a restraining order or injunction in any court of competent jurisdiction to prevent the continuation of any violation of this Agreement[.] . . . The expense of such arbitration shall be borne by the party who was found to be in breach of the Agreement. The parties shall bear their own legal fees and personal costs of such arbitration.

2

Doc. No. 32-1 at PageID 205-06.  Finally, the agreement established that it should be construed according to Ohio law.  *Id.* at PageID 205.

When Maro began working for Commuter, Gottesman wrote in a welcome letter to her that after Commuter reached $1.6 million in revenue by 2015, he hoped Commuter would reach between $2 million and $2.5 million in 2016.  Doc. No. 32-2 at PageID 213.  Gottesman set a budget of $2.3 million for the sales team in 2016, but he testified that it only matters that Commuter generate more income than expenses.  *Id.* at PageID 214.

Maro and Gottesman had a couple issues that lingered throughout the duration of Maro's employment.  She raised concerns that clients' advertisements were not running on transit vehicles.  *Id.* at PageID 216.  Gottesman seemed to take this issue seriously and worked to address it.  *Id.*  Meanwhile, Gottesman was hyper-aware of company expenses and that created tension between Gottesman and Maro.  *Id.* at PageID 215.

Gottesman was also critical of how Maro handled her schedule.  She once missed a flight to Florida.  *Id.*  Although she arrived there later, she missed a client meeting.  *Id.*  In another instance, she was unable to meet with him on a Sunday once due to social plans.  *Id.*  Also, once in November 2016, she missed a flight from Chicago to Dayton to meet with Gottesman and, therefore, arrived late.  *Id.* at PageID 217.  When Maro arrived in Dayton after the missed flight, Gottesman presented Maro with a written list of performance concerns, including: an instance when they "were not on the same page," that Maro "was not handling 'small stuff' without him[,] and a time that she was not available while out of the country on a personal trip.  *Id.* at PageID 217.  The meeting ended on better terms, and the rest of the work trip was productive.  *Id.*

The relationship appeared to improve in December 2016.  Gottesman sent Maro a personalized holiday card thanking her for "an incredibly insightful, passionate year of learning + achieving success at [Commuter]" and stating that "year 2 is about GROWTH!"  *Id.*

3

On January 2, 2017, Maro wrote to Gottesman and noted the company's success, stating Commuter had $1,860,910 in profits, a 19.5% increase from the prior year, and claimed it was the largest ever. *Id.* at PageID 218. Gottesman responded that it was "respectable!" but also said it was higher in other years. *Id.* He then requested that Maro attend a meeting "with a prospective client" in Columbus on January 9, 2017. *Id.* On January 3, Maro notified Gottesman that flight costs and "important medically related personal matters" (an IVF appointment, though she had not disclosed that information to Gottesman) would prevent her from attending the meeting. *Id.* Gottesman said Commuter could "100% always work around that" but that he expected her to propose solutions, not just challenges. *Id.* at PageID 219. Two days later, Maro had an anxiety attack following this dispute. *Id.*

"On January 9, 2017, at her IVF appointment, Maro learned that she was pregnant[.]" *Id.* On January 11, 2017, Maro told Gottesman that she was pregnant. *Id.* She also told him it was a "high risk pregnancy" and she would not be able to fly during her first trimester. *Id.* She added that she would keep up with her job responsibilities and would be able to travel after the first trimester. *Id.* Finally, she told him that her due date was September 10, 2017. *Id.*

On January 15, 2017, Maro provided Gottesman with a memo regarding 2016 sales— indicating that Commuter ended 2016 "with the '[l]argest net revenue . . . in it[s] history'"—and she concluded that it was an excellent report. *Id.* at PageID 226. On January 16, 2017, Gottesman sent a memo to Maro confirming that she reached the board-approved-budget for 2016. *Id.*

On January 27, 2017, Maro and Gottesman met for a performance review that Gottesman later described as "crappy." *Id.* at PageID 220–21. But, at that review, he stated that he wanted Maro to stay at Commuter "forever." *Id.* at PageID 220.

4

In early February 2017,[1] Gotttesman had a call with a former employee, Kelli Barbour ("Barbour").  *Id.*  Barbour initially came to Commuter because Maro hired her, but Maro later determined that Barbour was not a strong employee and was not disappointed when she quit.  *Id.* at PageID 216.  Because Gottesman wanted Barbour to return, Maro lured her back with a raise, but then Barbour quit again.  *Id.*  Gottesman testified in the underlying arbitration proceedings that, after this phone call with Barbour, he felt Maro misled him about their working relationship and felt that the company could have reduced its loss in 2016 to $100,000 if Maro had not caused Barbour to quit the second time.  *Id.* at PageID 220.

On February 6, 2017, Gottesman met with Maro and terminated her employment with Commuter.  Doc. No. 32 at PageID 185; Doc. No. 32-2 at PageID 221.  He cited Maro missing meetings in Atlanta, though Maro responded that Barbour gave her the wrong address for the meeting.  Doc. No. 32-2 at PageID 221.  Nonetheless, Gottesman said, "It's just not going to work out."  *Id.*  Maro stayed through February 10, 2017 to close a $20,000 contract with an Atlanta company and then left Commuter permanently.  Doc. No. 23 at PageID 114; Doc. No. 32-2 at PageID 221.

**B. Procedural History**

   **1. Maro's Initial Suit**

Maro first sued Commuter in the Cook County, Illinois Circuit Court.  Doc. No. 1-1 at PageID 5.  She alleged pregnancy discrimination in violation of Illinois law, retaliation, and

---

[1] The interim arbitration award states that this conversation occurred in "early February, 2016[.]"  Doc. No. 32-2 at PageID 220.  The interim arbitration award also states that Maro's employment was terminated on "February 6, 2016[]" and that her final day with Commuter was "February 10, 2016[.]"  *Id.* at PageID 221.  Because of the sequence of the events (*see id.* at PageID 216–21), because Commuter states in its motion that it terminated Maro's employment on February 6, 2017 (Doc. No. 32 at PageID 185), and because Maro states in her motion that her final day with Commuter was February 10, 2017 (Doc. No. 23 at PageID 114), and the Court construes these three references to "2016" as typos which do not affect its analysis.

5

intentional infliction of emotional distress. *Id.* at PageID 14, 16–17. Commuter removed the case to the U.S. District Court for the Northern District of Illinois. Doc. No. 1 at PageID 1. Commuter then moved to stay proceedings and compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq* ("FAA"). Doc. No. 8 at PageID 31. The District Court granted that motion, stayed proceedings, and compelled arbitration. Doc. No. 20 at PageID 82.

### 2. The Panel's Interim Award

After delays due to COVID-19, the arbitration took place in Dayton, Ohio on June 16–18, 2021 before the Panel. Doc. No. 21 at PageID 83. The Panel issued an interim award in favor of Maro on September 17, 2021, finding that Maro prevailed on her pregnancy discrimination claim, but did not make a final decision regarding damages or render an attorney's fees or costs award a that time. Doc. No. 32-2 at PageID 230.

The Panel summarized in its interim award that Gottesman testified at the arbitration hearing that he terminated Maro because of: (1) her poor performance review; (2) Commuter recording a $242,000 loss for 2016; and (3) Commuter's missed opportunity to reduce that loss to $100,000 if Barbour had not quit a second time, which Gottesman attributed to Maro. Doc. No. 32-2 at PageID 221. Maro testified at that hearing that she believed she was terminated: (1) for raising concerns about client advertisements not running; and (2) because she would be on maternity leave in the fourth quarter of 2017, when employees were not permitted to take time off. *Id.*

The Panel found in its interim award that Maro pled pregnancy discrimination as either a single-motive claim or a mixed-motive claim under Ohio law. *Id.* at PageID 222–23. It then recognized that the *McDonnell Douglas* burden-shifting analysis applies to single-motive discrimination claims based upon indirect evidence. *Id.* at PageID 223. The Panel found that Maro did not prove that all of Commuter's reasons for terminating her employment were

6

pretextual. *Id.* at PageID 224. While she proved that she hit Gottesman's actual sales revenue targets, Commuter proved that it fired her partially for how she dealt with Barbour. *Id.* at PageID 225.

Turning to her mixed-motive claim, the Panel noted that Maro only needed to prove "that pregnancy discrimination was 'a motivating factor' among others in [Commuter's] decision to terminate her employment[,]" and did not need to prevail on *McDonnell Douglas* framework. *Id.* at PageID 225. The Panel then found that Maro's "pregnancy was at least 'a' motivating factor in her termination." *Id.* The Panel concluded that Gottesman terminated Maro after considering that she would be limited in travel due to her high-risk pregnancy, would be on leave during the fourth quarter, had a high compensation package, and was poorly performing her job in his opinion. *Id.*

The Panel then stated that on a mixed-motive claim, Maro is only entitled to damages if Commuter can prove it would have terminated her even if she were not pregnant. *Id.* at PageID 225–26. The Panel found Maro's communication about missed flights "less than crystalline," but found her revenue success indicated her strong leadership skills. *Id.* at PageID 226. It did not find Commuter's claims about her integrity or the allegations from Barbour to be credible. *Id.* at PageID 226–27. Finally, the Panel found there was little weight to Commuter's claims about the cost of her salary because Gottesman admitted that her name gave Commuter credibility and because he incurred expenses for Commuter like using a corporate apartment during his divorce, using a company car, and taking a business trip to Israel. *Id.* at PageID 227. Thus, the Panel found Commuter did not prove it would have terminated Maro if she were not pregnant. *Id.* Last, it rejected Maro's intentional infliction of emotional distress and retaliation claims and ordered the parties to submit briefing regarding damages, attorney fees, and costs. *Id.* at PageID 229–30.

### 3. The Panel's Final Award

After the Panel issued its interim award, Commuter questioned whether the mixed-motive

analysis applied. Doc. No. 32-5 at PageID 274. The Panel then ordered the parties to file additional briefing on that issue. *Id.* Commuter argued that a federal discrimination claim is inapplicable because Commuter has less than fifteen employees, so Maro's claim falls instead under Ohio Rev. Code ("O.R.C.") § 4112.02. Doc. No. 32-4 at PageID 257. It then argued that "recent federal and state cases interpreting O.R.C. § 4112.02 make it clear that mixed-motive liability is not recognized under Ohio law. . . . To maintain the integrity of this arbitration, the legal conclusions of the [i]nterim [a]ward must be revisited and aligned with Ohio law[.]" *Id.* Significantly, to reach this conclusion, Commuter relied on two federal cases, *Francis v. Davis H. Elliot Const. Co.*, No. 3:12-cv-87, 2013 WL 941527 (S.D. Ohio Mar. 11, 2013) and *Jones v. Honda of Am. Mfg., Inc.*, No. 3:13-cv-167, 2015 WL 1036382 (S.D. Ohio Mar. 9, 2015), as well as Ohio state appellate cases including, *inter alia*, *Wholf v. Tremco, Inc.*, 26 N.E.3d 902 (Ohio Ct. App. 2015). Doc. No. 32-4 at PageID 261–62. Maro responded that the Panel should follow a burden-shifting framework in analyzing her claim, citing *Birch v. Cuyahoga Cnty. Probate Ct.*, 880 N.E.2d 132, 139 (Ohio Ct. App. 2007) for support. Doc. No. 32-5 at PageID 274. She urged the Panel to use a "determining factor" test based upon Ohio jury instructions. Doc. No. 32-5 at PageID 275.

The Panel issued a final award on February 24, 2022. Doc. No. 32-5. It first found that Ohio law applies due to the governing provision of the parties' employment agreement. *Id.* at PageID 274. The Panel agreed with Commuter that Ohio law has not recognized a mixed-motive claim and then re-analyzed Maro's pregnancy discrimination claim. *Id.* at PageID 275. It looked to Ohio appellate caselaw examining retaliation claims, which have found that the "because of" language in the statute gives a claimant the burden of proving, based on a "but for" test, "that the retaliatory animus was a determinative, not merely motivating, factor." *Id.* (quoting *Nebozuk v. Abercrombie & Fitch Co.*, No. 13AP-591, 2014 WL 1481062, at *12 (Ohio Ct. App. Apr. 15, 2014)).

8

The Panel then reviewed Commuter's reasons for terminating Maro—missed flights and meetings, among other concerns—in light of its interim award and said, "We acknowledged that these reasons were considered by [Commuter] in making the discharge decision, but we found them insufficient to support that decision: 'We find Maro's productivity and success in her position well established. In comparison, Gottesman's complaints about her leadership were less than persuasive.'" Doc. No. 32-5 at PageID 276 (citing Doc. No. 32-2 at PageID 226). The Panel highlighted Maro's impressive sales numbers to support that finding. *Id.* at PageID 276–77. It stated that a "but for" analysis does not require that all of Commuter's reasons are pre-textual. *Id.* at PageID 277. Rather, the Panel "considered [Commuter's] proffered reasons in the aggregate, and found them to be inadequate to support the termination decision. Rather, the determining factor was [Maro's] pregnancy." *Id.* Thus, the Panel found, "she was terminated 'because of' her pregnancy[.]" *Id.*

The Panel determined that Maro is entitled to $637,182.13 in backpay. *Id.* at PageID 278. It found that the parties' employment agreement—which states that the breaching party bears the arbitration expenses and that each party is responsible for their own attorney's fees (Doc. No. 32-1 at PageID 206)—governed the allocation of arbitration expenses and attorney's fees. Doc. No. 32-5 at PageID 277. Thus, the Panel found Commuter responsible for the arbitration expenses and determined that the administrative fees totaled $3,800 and that the compensation and expenses of the Panel totaled $78,084.86. *Id.* at PageID 277, 279.[2]

### 4. Motions Currently Pending

Following the final award, Maro moved the District Court for the Northern District of Illinois to confirm the Panel's award. Doc. No. 23. Commuter then moved to vacate the award,

---

[2] The Panel's determination regarding attorney's fees and the expenses and costs of arbitration are not disputed here. *See* Doc. Nos. 31, 32.

arguing that the Panel manifestly disregarded the law. Doc. No. 32.

Commuter also moved to transfer this case to the Southern District of Ohio. Doc. No. 30. After full briefing (*see* Doc. Nos. 35 and 36), the Northern District of Illinois granted Commuter's motion to transfer. Doc. No. 37. Thus, this Court now reviews whether to confirm or vacate the Panel's final arbitration award.[3]

## II.    LEGAL STANDARD

"Congress enacted the FAA to replace judicial indisposition to arbitration with a 'national policy favoring [it] and plac[ing] arbitration agreements on equal footing with all other contracts.'" *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 581 (2008) (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). For that reason, "[a] court's review of an arbitration award 'is one of the narrowest standards of judicial review in all of American jurisprudence.' . . . Disagreement with an arbitrator's factual findings does not constitute grounds for a court's rejection of those findings." *Way Bakery v. Truck Drivers Loc. No. 164*, 363 F.3d 590, 593 (6th Cir. 2004) (quoting *Tenn. Valley Auth. v. Tenn. Valley Trades & Lab. Council*, 184 F.3d 510, 514–15 (6th Cir. 1999)). "Indeed, '[a]s long as the arbitrator's award draws its essence from [an agreement], and is not merely [the arbitrator's] own brand of . . . justice, the award is legitimate.'" *Barrick Enter., Inc. v. Crescent Petroleum, Inc.*, 496 F. App'x 614, 616 (6th Cir. 2012) (*per curiam*) (alteration in original) (citing *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987)).

"A federal court may set aside an arbitration award only where certain statutory or judicially created grounds are present." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 420 (6th Cir. 1995). The FAA sets out several grounds for vacation, such as corruption,

---

[3] Neither party now disputes that this Court is the appropriate venue for review of these motions. *See* Doc. Nos. 32, 48.

10

fraud, or misconduct. *See* 9 U.S.C. §§ 9, 10. Alternatively, a party can seek to vacate through "a separate judicially created basis . . . where the arbitration award was made in manifest disregard of the law." *Jaros*, 70 F.3d at 421 (internal quotation marks and citation omitted).

Manifest disregard is a "a very narrow standard of review. . . . A mere error in interpretation or application of the law is insufficient. . . . Rather, the decision must fly in the face of clearly established legal precedent." *Id.* (citing *Anaconda Co. v. Dist. Lodge No. 27*, 693 F.2d 35, 37–38 (6th Cir. 1982)). "When faced with questions of law, an arbitration panel does not act in manifest disregard of the law unless (1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrators refused to heed that legal principle." *Id.*; *see also Glennon v. Dean Witter Reynolds, Inc.*, 83 F.3d 132, 136 (6th Cir. 1996).

### III. ANALYSIS

Commuter argues that the Panel's interim award, which analyzed Maro's case as a mixed-motive claim, was wrong because, it contends, mixed-motive claims are not permitted under Ohio law. Doc. No. 32 at PageID 191. Commuter then argues that the Panel's effort to realign Maro's case, in its final award, as a single-motive claim showed manifest disregard for the law. *Id.* at PageID 196–97. As explained herein, the Court disagrees: (A) it is unsettled in Ohio courts whether plaintiffs can maintain mixed-motive claims; and (B) when the Panel adjusted its conclusions under a single-motive analysis, requested briefing from the parties, and reached a reasonable conclusion. In sum, the Panel did not manifestly disregard the law.

**A. Clearly Defined and Not Subject to Reasonable Debate**

"If a court can find any line of argument that is legally plausible and supports the award then it must be confirmed. Only where no judge or group of judges could conceivably come to the same determination as the arbitrators must the award be set aside." *Jaros*, 70 F.3d at 421 (first citing *Storer Broad. Co. v. Am. Fed'n of Television & Radio Artists*, 600 F.2d 45, 48 (6th Cir.

11

1979); and then citing *Ainsworth v. Skurnick*, 960 F.2d 939, 941 (11th Cir. 1992)). Thus, the court must analyze whether there is a line of argument that supports the award.

The Panel found, subject to no dispute, that Title VII does not apply to this case. Doc. No. 23-1 at PageID 120. The Panel applied Ohio law, because of Maro's employment agreement and Commuter's request. *Id.* Commuter argues that Southern District of Ohio and Ohio intermediate appellate court precedent establishes that mixed-motive claims pursuant to O.R.C. § 4112.02(A) are not permitted. Doc. No. 32 at PageID 193–94, 196. This argument makes a fatal mistake: the Ohio Supreme Court is the final arbiter on the interpretation of Ohio law.

> No federal court has the final say on what Ohio law means. Even a decision by the highest federal court, the United States Supreme Court, about the meaning of an Ohio law has no more binding authority on the Ohio Supreme Court than a decision of the Michigan Supreme Court or for that matter any other court.

*Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 472 (6th Cir. 2008) (*per curiam*); *see also Erie R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938) ("The authority and only authority is the State, and if that be so, the voice adopted by the State as its own (whether it be of its Legislature or of its Supreme Court) should utter the last word"); *Humphreys v. Bellaire Corp.*, 966 F.2d 1037, 1042 (6th Cir. 1992) ("[R]eliance on federal cases interpreting Ohio law is only correct if those cases accurately reflect the law of Ohio" (citing *Erie R. Co.*, 304 U.S. at 79)); *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001) ("If the state supreme court has not yet addressed the issue presented, we must predict how the court would rule by looking to all the available data. . . . 'Relevant data include decisions of the state appellate courts'" (quoting *Kingsley Assocs., Inc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 507 (6th Cir. 1995))). Thus, cases from this Court, and the Ohio appellate courts, while instructive, are not binding interpretations of Ohio law and Commuter incorrectly views them as determinative.

The Court must determine the Ohio Supreme Court's position on mixed-motive claims.

12

Generally, the Ohio Supreme Court "will apply federal law precedent interpreting Title VII of the 1964 Civil Rights Act to cases involving violations of [O.R.C. §] 4112." *Ohio Civ. Rts. Comm'n v. David Richard Ingram, D.C., Inc.*, 630 N.E.2d 669, 674 (Ohio 1994). As the Sixth Circuit has found, the Civil Rights Act of 1991 "eliminate[d] the employer's ability to escape liability in Title VII mixed-motive cases by proving that it would have made the same decision in the absence of the discriminatory motivation." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 397 (6th Cir. 2008).

The Ohio Supreme Court has not ruled on whether these claims are permissible. *See Veal v. Upreach, L.L.C.*, No. 11AP-192, 2011 WL 4986794, at *7 (Ohio Ct. App. Oct. 20, 2011) ("[I]t is less than settled whether mixed-motive claims are viable in the context of [O.R.C. §] 4112.02(A)"); *see also Beckloff v. Amcor Rigid Plastics USA, LLC*, 93 N.E.3d 329, 339 (Ohio Ct. App. 2017) ("We need not consider whether Ohio recognizes a 'mixed[-]motive' discrimination claim . . . in this case"). In fact, Commuter quoted *Francis* to argue that the Panel here refused to heed settled legal principles, yet omitted the language expressly stating, "Ohio case law is 'less than settled whether mixed-motive claims are viable in the context of [O.R.C. §] 4112.02(A).'" *Francis*, 2013 WL 941527, at *8 (quoting *Veal*, 2011 WL 4986794, at *8) (citing *Clinton v. Faurecia Exhaust Sys., Inc.*, No. 2012-CA-1, 2012 WL 4762021, at *11 (Ohio Ct. App. Oct. 5, 2012)).

Indeed, Ohio appellate courts have taken different stances on mixed-motive claims in the O.R.C. § 4112 context. *Compare Wholf*, 26 N.E. 3d at 909 (finding that state retaliation claims require "'cause-in-fact' causation standard rather than a mixed-motives standard"), *with Potocnik v. Sifco Indus., Inc.*, 660 N.E.2d 510, 516 (Ohio Ct. App. 1995) (upholding a jury instruction shifting the burden of persuasion to the employer to provide a non-discriminatory reason in a mixed-motive disability discrimination case), *Witzigreuter v. Cent. Hosp. Servs. Inc.*, No. 109192,

2020 WL 6335928, at *7 (Ohio Ct. App. Oct. 29, 2020) (declining to apply a mixed-motive framework based on the facts of an age and gender discrimination case), *and Thomas v. Columbia Sussex Corp.*, No. 10AP-93, 2011 WL 96277, at *5 (Ohio Ct. App. Jan. 6, 2011) (finding that the facts of the age-discrimination case indicated that it was not a mixed-motive case).

If this Court had to reach a conclusion on mixed-motive cases, these cases would be instructive but not mandatory. *See Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) ("If the issue has not been directly addressed, we must 'anticipate how the relevant state's highest court would rule in the case[.]' . . . 'Intermediate state appellate courts' decisions are also viewed as persuasive unless it is shown that the state's highest court would decide the issue differently'" (citing *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005))). Here, though, this Court need only establish whether Ohio law has a clearly established rule on mixed-motive claims.

Based on the silence from the Ohio Supreme Court and the varied opinions amongst the Ohio appellate courts, the Court finds there is no clearly established rule and Commuter incorrectly asserts otherwise. *See, e.g.*, *Wells Fargo Advisors LLC v. Tucker*, 373 F. Supp. 3d 418, 433–34 (S.D.N.Y. 2019) (arbitrator did not manifestly disregard the law because it was unsettled and she attempted to apply the correct precedents to the issue).

### B. Arbitrators Refused to Heed

Errors do not satisfy the manifest disregard standard. *Schafer v. Multiband Corp.*, 551 F. App'x 814, 820 (6th Cir. 2014) ("Legal error by the arbitrator—even clear legal error—is however not by itself sufficient for vacatur of an arbitration agreement. . . . Manifest disregard of the law is not just manifest error of law. If the arbitrator expressed disagreement with the law, rather than interpretation of the law, that might suggest 'disregard'"); *Dawahare v. Spencer*, 210 F.3d 666, 671 (6th Cir. 2000) (rejecting the plaintiff's assertion that the arbitrators rejected the common law of damages because there was "simply no evidence that the arbitrators were aware of some relevant

14

law on damages that they chose to ignore"); *Elec. Data Sys. Corp. v. Donelson*, 473 F.3d 684, 692 (6th Cir. 2007) ("[O]nly . . . [a] legal error that is evident without scrutiny of intermediate mental indicia [] remains reviewable. . . . In many cases the arbitrator's alleged error will be as equally attributable to alleged 'unwarranted' factfinding as to asserted 'error of law.' In such cases the award should be upheld" (quoting *Detroit Auto. Inter-Ins. Exchange v. Gavin*, 331 N.W. 2d 418, 428 (Mich. 1982))); *but see Coffee Beanery, Ltd. v. WW, L.L.C.*, 300 F. App'x 415, 420–21 (6th Cir. 2008) (finding on a legal issue with no factual application that the arbitrators manifestly disregarded a statute that clearly and unambiguously required the disclosure of felony convictions involving "misappropriation of property" when the arbitrators found it was not necessary to disclose a felony conviction for grand larceny even though all parties agreed on the applicable law).

Here, after the interim award was issued and before the final award was issued, Commuter "brought the aforementioned caselaw—primarily *Francis* and *Jones*—to the Panel's attention." Doc. No. 32 at PageID 195. The Panel then took additional briefing from both sides and incorporated it into its final award. Doc. No. 32-5 at PageID 274. In that award, the Panel agreed with Commuter that *Francis* and *Jones* precluded a mixed-motive analysis. *Id.* at PageID 275. The Panel agreed with Maro that the "because of" language in O.R.C. § 4112.02(A) requires a "but for" causation standard and used the "determining factor" terminology that Maro suggested. *Id.* at PageID 275. Finally, the Panel used the *McDonnell Douglas* burden-shifting framework to determine that Maro prevailed on her discrimination claim. *Id.* at PageID 276–77.

Commuter now argues that the Panel's effort to reconcile the interim and final awards demonstrated "conscious disregard" of Ohio law because the Panel used non-binding "determining factor" language. Doc. No. 32 at PageID 196. Commuter further argues that the request for additional briefing "suggest[s] that the Panel was searching for a way to 'get around' Ohio law to

15

award damages." *Id.* at PageID 194–95.

The Panel did not manifestly disregard the law. Both the interim and final awards recognize that the *McDonnell Douglas* burden-shifting framework applies to claims of pregnancy discrimination in violation of O.R.C. § 4112.02(A) based on indirect evidence. *See* Doc. No. 32-2 at PageID 223; Doc. No. 32-5 at PageID 277; *see also McFee v. Nursing Care Mgmt. of Am., Inc.*, 931 N.E.2d 1069, 1076–77 (Ohio 2010) (applying *McDonnell Douglas*).

> [I]f a plaintiff establishes a *prima facie* case of disparate-treatment employment discrimination under [O.R.C. §] 4112, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its treatment of the plaintiff. . . . If the employer carries its burden of articulating a legitimate, nondiscriminatory reason for its employment decision, the plaintiff must prove that the employer's stated nondiscriminatory reasons *were a pretext for impermissible discrimination*.

*Allen v. totes/Isotoner Corp.*, 915 N.E.2d 622, 623–24 (Ohio 2009) (*per curiam*) (italics added).

The Panel does not explicitly analyze whether Maro establishes a *prima facie* case. Doc. No. 32-5 at PageID 276–77; *see also Allen*, 915 N.E.2d at 623–24. However, it is plausible that the Panel, nevertheless, found that she met it, which no party has disputed. *See Hale v. Morgan Stanley*, 571 F. Supp. 3d 872, 879 (S.D. Ohio 2021) ("If the Court can find 'any line of argument that is legally plausible and supports the award[,] then it must be confirmed'" (alterations in original) (quoting *Jaros*, 70 F.3d at 421)).

The Panel found in both the interim and final awards that Commuter's non-discriminatory reasons for discharging Maro, in the aggregate, were not persuasive and did not actually motivate Commuter to terminate her employment due to her success in her role; thus, it found Commuter's stated reasons were a pretext for discrimination. The Panel therefore found that Maro was terminated because of her pregnancy. *See* Doc. No. 32-5 at PageID 276–77; Doc. No. 32-2 at PageID 226–27. The Court cannot disturb the Panel's factual determination. *See Arabian Motors Grp., W.L.L. v. Ford Motor Co.*, 775 F. App'x 216, 220 (6th Cir. 2019) (holding that the arbitrator's

factual determination cannot create a claim for manifest disregard); *Visconsi v. Lehman Bros., Inc.*, 244 F. App'x 708 (6th Cir. 2007) (finding no manifest disregard because a legally plausible explanation existed for the arbitrators' conclusion).

Whether the Panel erred by raising the causation standard required in a retaliation claim (Doc. No. 32-5 at PageID 275), referring to a "determining factor" analysis (*id.* at PageID 277), or agreeing with Commuter that mixed-motive claims are not permitted under Ohio law (*id.* at PageID 275), is irrelevant because "err[or] in interpreting the applicable law . . . is [] insufficient to warrant vacatur." *Questar Cap. Corp. v. Gorter*, 909 F. Supp. 2d 789, 826 (W.D. Ky. 2012). To the extent Commuter asks this Court to find manifest disregard of the law based on inconsistency in the factual determinations in the interim and final awards (Doc. No. 32 at PageID 195), this assertion would require the Court to delve into the Panel's factual determinations, which it cannot do. *See Murray v. Citigroup Glob. Markets, Inc.*, 511 F. App'x 453, 455 (6th Cir. 2013) ("[Plaintiff's] claims . . . contain thinly veiled attempts to relitigate factual determinations made by the arbitration panel. As a categorical matter, we do not engage in such exercises when reviewing an arbitration award").

There is no basis to vacate the final arbitration award because the Panel faced an unsettled legal area, requested guidance from both sides, analyzed the issues, took testimony, and reached a reasonable conclusion based on the evidence before it. *See Gibbens v. OptumRx, Inc.*, 778 F. App'x 390, 396 (6th Cir. 2019) (confirming an arbitration award where the arbitrator "considered the available precedent and reached a reasonable conclusion[]").

## IV.  CONCLUSION

For the aforementioned reasons, the Court **GRANTS** Maro's motion to confirm the arbitration award, **DENIES** Commuter's motion to vacate the arbitration award, and **TERMINATES** this case on the docket.

**IT IS SO ORDERED.**

March 22, 2023                                              s/Michael J. Newman
                                                           Hon. Michael J. Newman
                                                           United States District Judge